Before we start the clock, do you have a time agreement on it? Yes, I do, Your Honor. With the Court's permission, Mr. Eddy and I will split time. Twelve minutes for me and two minutes for Mr. Lawrence. Very good. Thank you. May we proceed when ready? I will try to reserve one minute to respond to Mr. Hoffman. May it please the Court, James Fife of Federal Defenders, on behalf of the Appellant, Mr. Johnson. The District Court committed constitutional error in refusing to instruct the jury on an essential element of the charged offense. As shown by the length of deliberation, the complex jury questions, and the acquittal on three other counts, the government cannot demonstrate the error was harmless beyond a reasonable doubt under Chapman. Accordingly, the Court should reverse. In any event, the sentence should be vacated and the case remanded for resentencing. An instructional error, the constitutional instruction error, the Supreme Court held in Jackson, as we've heard, that when the evidence supports it, non-entrapment, proof of non-entrapment is an element of the substantive offense. Under Sullivan and Winship, the Court is required to instruct on essential elements that the jury must find beyond a reasonable doubt. And this Court has held in numerous cases the same thing. The Model Jury Instruction 6.2 simply implements these requirements of Jacobson and Sullivan by requiring that, as the commentary says, an additional element, quote-unquote, is added to the substantive offense. That was not done here. Judge Whelan refused to do that. And I can't think of any reason why, because there's no reason not to include a legally correct statement of the additional element. It wasn't confusing, and it's required by the instruction and by the Constitution. The only reason the judge gave for not giving it was a perceived unfairness to Mr. Warren. The Court said that it would be prejudicial to Mr. Warren. He said that three times. He refused to give it. And he said, this is my reason it would be unfair. But that just doesn't make any sense, because Mr. Warren, even before trial started, expressly objured applying an entrapment offense to his case. And, in fact, presented no evidence that he was not predisposed, and no evidence at all that he was induced, because that simply wasn't his defense. In fact, Judge Whelan would have been fully justified to have instructed the jury, the defense does not apply to Mr. Warren, because he presented no evidence and did not request it. So there couldn't be any unfairness. There just simply wasn't any reason not to follow the requirements of the Constitution under the Supreme Court cases. My question is, why wasn't this covered by the other instruction, by the general instruction? Maybe he could have added it, you know, as a comment to the model instructions that suggested there's no law, there's no rule, there's no case. I mean, it's a comment. He gave a general instruction. Why wasn't that at least adequate? Well, if the general instruction, the bare instruction, and 6.2 were adequate, obviously the comment wouldn't have that requirement. It's a comment. The comment said should, and I think it's more than just should. It's because that is totally the implementation of Jacobson and Sullivan, that it is an additional element, even the commentary calls it an additional element. Let's say it is. Why isn't then the general instruction that he gave not perfect, but adequate? Not adequate for several reasons, Your Honor. Number one, the defense did offer two alternatives to this, and I think there's two ways of complying with Jacobson and Sullivan in this case. One would be, actually three possibilities. One would be to have an omnibus instruction that said this defense applies to all charges. The defense proffered such a defense instruction. The court refused it. The second alternative, as the commentary says, which I think is the better alternative, include it as an additional element in each of these charges for the substantive offenses. The court refused that. And, in fact, the defense asked for both. That would be the third alternative. I think in order to comply with the Constitution here, to comply with the law, there has to have been, with due process, there has to have been some affirmative indication to the jury that the entrapment, the disproof of entrapment was an element of every single charge. The instruction that he gave says that government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. Yes. Now, again, I'm asking you, why isn't that adequate? For one thing, I think just giving a general defense instruction, as the commentary indicates, isn't sufficient, because it's a big difference between saying that here is a defense and saying this is an element that the government must prove beyond a reasonable doubt. I know that we, as lawyers, can put that together. But we have to think of an average jury. Would they really understand completely that that's a very different thing to say something is an element and explicitly saying in each of the charge defenses this is an element. It's like if we said, if we had several crimes where there was a mental state, like intention was an element that had to be proved, and to have an instruction that didn't just generally say that, well, intention is required for the crime, but nothing that linked it to each of the substantive offenses, that may or may not, nothing that says, by the way, this element applies to every one of these offenses. There's just nothing here that links it. And I think one thing in addition, the standard instruction here wasn't modified in any way, except to delete the requirement that the comment says. And I think it is at least misleading. It's possible that the jury was misled because the instruction the court gave says repeatedly, the crime, the offense, the crime in the singular. And that's at least confusing to the jurors about whether it does apply to every one of the offenses that's been charged. So the fact that it is a requirement under the Supreme Court cases, it is a requirement under the official commentary, there's no reason not to do it, and there's at least, as the Supreme Court said in Chapman, and I always like to go back to first principles, and I went back to Chapman and look at the very language that they use, and Chapman says, there's a reasonable possibility that the error contributed to the conviction, or an error in admitting plainly relevant evidence, that's the error in Chapman, which possibly influenced the jury adversely to the litigant, cannot stand. There is at least a reasonable possibility that the jurors were confused here, that whether it applied to every one of the offenses, because they were not told that expressly, they were not given any reasonable alternative for showing that, that it actually applied to each of the offenses. Their split verdict indicates some confusion here. They took a long time deliberating, over the course of two days. They sent out very intricate, sophisticated legal jury questions, showing they were really paying attention to this, and they were struggling with it, and then they return a verdict that, frankly to me, doesn't make any sense, because this was an indistinguishable course of conduct, and especially between Counts 3 and Counts 4, Count 3 was possession of a firearm for the furtherance of the robbery, and the robbery and the drug conspiracy, that was exactly the same weapons, possessed for the same purpose, obtained and possessed for exactly the same purpose, which was Count 4. I just don't see how they could acquit on Count 3, and not see that it would be the same evidence, applied to the same guns in Count 4. Now one thing that I know the government has raised, and it's brief, and I want to apologize to the court, I didn't include the argument from the trial in the ER. I have it as a rule, I really take seriously, trying to keep the ER as brief as possible, but I have a rule that whenever there's any kind of sufficiency argument, I include the whole trial testimony for the court's benefit, but I tried to cut that down by not including the argument. I didn't think it would be relevant. Obviously the government didn't think it was relevant either, because they didn't apply the supplement. But let's look at the one thing that the government argues in its brief, bridges the gap, and they say, well, counsel argued this. Well, I've got several responses to that. Well, I noted cases in my briefs, Morton and Al-Faraheen, where the court said, well, the fact that counsel argued it doesn't bridge the gap that there was an instructional error. And it was only very limited. I did go back and review it, and we can provide the court with the actual pages from the argument. It is in the record, but there was only a very limited portion where the defense mentioned it at the very end of argument over the course of two pages out of a 20-page argument where they mentioned that it applies to all of the offenses. The government never said anything about it. In fact, they went through the various counts seriatim, and though they mentioned entrapment, they never specifically linked the entrapment defense as an element. They listed all the elements of each of the offenses, and they never said non-entrapment or addressed it seriatim in each of them. So I'm not saying that's error. I'm just saying that the government's argument didn't do anything to bridge the gap. Furthermore, the jury was instructed with the standard instruction 3.7, which says that arguments of counsel are not evidence. They were actually invited not to listen to the counsel's argument and take it as dispositive. And as a policy matter, that is exactly right.  We don't want them listening to counsel to try to figure out what law applies to this case. We want them to listen to what the judge says. In this case, unfortunately, the judge's instructions were erroneous, and that is constitutionally defective conviction. But in the normal case, we want them to take the law as the judge gives it and not... We can't now say, for Chapman purposes, we can reverse that and say, well, if counsel argues it, then it's harmless error. We want them to say no, listen to the instructions, and here no instruction expressly said that it applies to every one of the offenses. Only a short part of defense counsel's argument said that. And finally, even if we can consider that argument that counsel made, it is, after all, the government's burden under Chapman to show that this is harmless beyond all reasonable doubt. And I don't think the government can show that there's no reasonable possibility of an adverse effect having an effect on this, where all we have is counsel's statement and nothing in the instruction and other signs that the jury was confused or struggling with this. I just don't think that the government can show there's no reasonable possibility of an adverse effect here, in which case the Chapman standard hasn't been met. Even if we allow that argument, it really can bridge that major gap of leaving out an entire element. What do you make of the fact, though, that the jury acquitted on all of the three of the counts? They must have understood the entrapment issue. Well, I think there might be. We, of course, are speculating. We have no idea, but one explanation might be they were just utterly confused and the verdict reflects that. But if we want to give them some leeway, you might see that you might draw a line between the three first counts, which was the drug conspiracy, the Hobbs Act, and the firearms, that those three were very intricately linked. Even the district judge recognized that. Well, yeah, it makes sense to me, the district judge says, that if they acquit on the first two, they're going to acquit on the third. The judge just didn't make the logical extension that, well, yes, if they acquit on the firearm count, they have to acquit on the felon in possession as well. They just didn't draw that. Why? Because these were precisely the same firearms. They may be, but they may have had them for purposes other than the stash-out. Well, that's possible, but the evidence didn't indicate that. The evidence, even the government admitted it in their rebuttal argument, the evidence at trial indicated that those firearms were obtained by Mr. Candler, the unindicted co-conspirator, and placed in the trunk of his car. Mr. Johnson drove the car down to the location where the robbery was going to be staged, and apparently the evidence would show that he knew they were in the car because he was moving towards the trunk when they were arrested. So he knew they were there, but all the indication is that they didn't have any firearms beforehand, that these were firearms they obtained for the purpose of the robbery. Mr. Candler provided them. In fact, the taped testimony, the taped surveillance testimony, strongly indicates that because they're talking about, well, we'll go back to Pasadena and see if we can get firearms. And they even said, well, maybe we know somebody down here who can provide them. There's no indication that they possessed them beforehand. But even more critically, even if there's some indication that they may have possessed some firearms previously, there was no proof that those firearms were operative, whatever they were, or that they had moved in interstate commerce. There's no way the jury could have convicted them on firearms where these hypothetical firearms, for which there was no evidence for other essential elements. The interstate commerce, the operability, were only shown as to the two weapons that were in the trunk of Mr. Candler's car. You're down to six and a half minutes, so Mr. Eddy, I presume, is free to argue. Thank you. Why don't you wait just a minute. Good morning, Your Honors. Would you put eight minutes on for him? Full eight. Grant Eddy for Daniel Warren. May it please the Court. I'd like to focus in on the issue number two that I raised in my brief, which is the improper admission of prior acts evidence regarding a 2008 incident that included firearms. The problem with that is this prior acts evidence really wasn't evidence at all. There was no testimony or competent evidence introduced that Mr. Warren actually possessed a firearm on that particular incident. And, in fact, that prior incident, as the government has admitted in their brief, was actually not the same as the incident regarding the Pasadena woman's apartment where drugs and guns were found. And there was testimony that Mr. Warren, from time to time, was there. That prior incident actually had to do with another incident on the same street, but involving a firearm incident where the client was, as the government was allowed to introduce, arrested, and then he was bound over for a prelim, and later the case was dismissed. As I cite, and, in fact, it's completely clear that arrest and even bind over for a prelim in a state matter is not evidence. So there was never any evidence introduced, as there should have been, regarding the prior incident and prior acts. 404B requires that there be actual competent evidence. Let's assume, for the sake of discussion, you're right about this. The evidence should not have come in. Yes. Their argument is it's harmless, given that, you know, when all is said and done, Mr. Warren was on videotape in possession of these weapons as a practical matter. So, in another case, you might get a reversal. In this case, you know, if your guy didn't commit the crime on videotape, you'd be in a better position. You mean the videotape relating to the prior incident? No, I mean this is where he was arrested. He arrives into this garage, and he's a passenger in a car that has the guns. Yes. That's pretty bad proof against him. Yes, absolutely, because my client is actually the passenger, and although it was mentioned here in the argument here about they going, talking on the videotape with the undercover agent, Mr. Kaz, or Kozlowski, my client is not saying on that videotape, if it's all reviewed, oh, I'm going to go up and get these weapons. I'm going to do this. It was actually Mr. Johnson talking about, let's go get them. And my client never says, yeah, I'm going to go get them. There's no evidence that my client actually went up and got them. He's not there just, you know, as a janitor. I mean, he's there to participate in this robbery. Yes, exactly. And he shows up at the scene where they're going to launch the robbery in the car that has the guns. It's all on tape. So even if this evidence shouldn't come in, I mean, it sounds like they've got him dead to rights just on the video. The problem with that is that my client's intent to possess the weapon, and I've handled quite a number of felon in possession of firearms. What's got to be shown is even for a second, and I've had this happen to me, a client on videotape makes a videotape of himself, and he's just for his personal showing off, has possession of a firearm for a few seconds. That's enough. But in this case, that videotape never showed the client being in actual physical possession. And as I cite- Why didn't it show him in constructive possession since it's in the trunk? Regarding felon in possession, constructive possession is not adequate because felon in possession requires, as I mentioned on page 51, possession of an item includes both the ability and intent to exercise control over that item. So to make sure I understand, you're saying a felon can have a gun in his trunk if he wants? No. No, he can't. That's possession. That's actual control. And ability and intent to exercise control of an item is if you've got it in the trunk of your car, if you have it in your house, for example, or a place where you're just sleeping. I've had that happen in cases, but it did not happen in this case. The possession that Warren apparently was going to have, the moment, was when the Stash House robbery was going to take place and start. That never started. That moment where he was going to take possession of it, presumably, never happened because these two people were arrested prior to the time that the Stash House bust was going to take place. There's no evidence that Mr. Warren had keys to that trunk, that he put the arms in that trunk, that he had the ability to get into the trunk. Mr. Warren was, frankly, a person who was not clearly the person that had control of that item. He was, along with Mr. Johnson, and presumably, we could say from the government's point of view, going to participate in the fictitious Stash House bust, but not at that time in possession, and no right to go into that trunk. There's no evidence that he had a right to enter that trunk at that time. The concept of attributing possession of Mr. Johnson to Mr. Warren is not applicable to felon in possession because that requires both the ability to exercise control and the actual present ability to control that item, and Mr. Warren did not have that. It was highly prejudicial, and I submit, because there was a lot of basis where a jury could have found that what I've just mentioned, Mr. Warren had not yet had the ability to control one of those two weapons in the trunk. And for that reason, it's prejudicial error, and it was not harmless error. Thank you very much, unless you have some questions. Thank you. Here from government. Good morning. Kyle Hoffman for the United States. I'll start with Mr. Fife's argument regarding the instructional issue. I'd start with a test, which is whether the instructions as a whole were misleading or inadequate to guide the jury, and I would submit they were not. I'd give you several reasons. As the court has already indicated, the defendants were entitled to and got the general entrapment instruction, and that's the general pattern instruction 6.2. As the court ruled twice, they were not limited. Counsel was not limited in any way in terms of arguing entrapment. The jury was allowed and it was encouraged to have the entrapment defense go to every single offense. Now, Mr. Fife referenced argument and suggests, well, argument isn't instruction, and I concede that. It isn't, but it goes to showing that nobody was confused about whether the entrapment defense applied to all counts. And here's just some quotations from the pages that Mr. Fife well knows about. Counsel said, he intended to have the guns, but all those things happened because he had been induced to commit the crime. That's what entrapment is. That's at page 690 of the trial transcript. His defense is that he was entrapped because it goes to every single charge. Again, that's 690. We admit he brought the guns. He did. Okay, I want to be very clear on that. He did, but he's not guilty because he was entrapped. So what am I saying? I'm saying essentially no one was confused about the issue about whether entrapment went to every single charge. There has been some discussion about, well, the jury must have been confused. I would suggest the evidence is precisely contrary. Looking at the notes, that's at ER 162 and following, the jury was very diligent, very almost philosophical in their logic. Can someone conspire with somebody if the other person is a government agent? What about unindicted co-conspirators and so on? And the mere fact that they've acquitted on three of the charges, showing that they understood it went to all of the charges. So I would suggest that that is indicative that nobody was misled. It was not inadequate. I'd also suggest on the legal point, Mr. Fife contends that putting the government must prove beyond a reasonable doubt that the defendant was not entrapped into every single substantive offense is an essential element. And then it's been held to be so in the cases. I would suggest that's not right. I'd suggest there's a reason why there's not a case citation in the comment where it says the district court should put that in. But that's indicative that under certain circumstances, it may not be the wisest course of action. And the district court – Can you give Judge Whelan's explanation for why he didn't do it? Well, just to be clear, he said he didn't do it because he was concerned that it would be indicative to the jury that he found that, well, entrapment just doesn't apply to Mr. Warren at all. So I think that's a reasonable concern. He's not entitled to screw one defendant to help the other defendant. Exactly. And just because Mr. Warren didn't explicitly argue the entrapment defense doesn't mean the jury couldn't have said, well, you know what? We think that that applies to Mr. Warren, too. They were instructed on it. It applied to all offenses. I mean, it's true Mr. Eddy didn't argue that. But when you actually look at what all is said and done, Mr. Warren benefited from the entrapment defense because they clearly found – in this case, it's pretty clear that they found that Mr. Johnson was entrapped and that the only two conspirators were Mr. Johnson and Mr. Warren, and Mr. Warren was entrapped, too, at least on those offenses. It does sort of bear on the motion to sever, doesn't it? Right, which is not before the court because that hasn't been raised as a separate ground for appeal. And I'd suggest that given the high standard for granting motions to sever, it wouldn't meet that high standard anyway or for reversing the denial. But the odd thing is if the trial had been severed, the district court never would have faced this problem. That's true. That's true. But standing back and saying, what is the defendant entitled to? Not perfect trials, fair trials. And I'd suggest this was a fair trial. Now, the other thing I'd suggest about the element in the entrapment issue is that it's very – it seems apparent to me that it's not illogical at all for the jury to find, well, there wasn't evidence of predisposition or the government didn't disprove that there was inducement as to the Stash House robbery, but there's a lot of evidence showing there's predisposition as to the possession of guns. And the district court – Justice Johnson. I'm sorry? Justice Johnson. Correct. Correct. Now, I'll take that as an opportunity to segue into Mr. Eddy's argument about the 440B issue. And I'd suggest there it's – Could you – I know you're going to respond to what's been argued. There are two issues that I'd like you to address, though, too. One is the nature of this sting. We're seeing a lot of these cases, and I'm interested in how this one came about on how they targeted these two guys. And secondly, on the supervised release condition, there's the issue of access to the court or being on court. Okay. I'll take those up since the court has asked. Well, you can – No, go ahead. I'll forget about them if I don't. All right. My understanding, and the testimony was, that this came about because the confidential informant, JoJo, was essentially trolling for gang members on Craigslist with clothing, essentially, that attracts gang members. And that Mr. Johnson responded, and that there was some indication during that conversation that Mr. Johnson was dealing drugs. And that JoJo, the confidential informant, floated the idea after that indication there's some dealing drugs, floated the idea of a stash house robbery. And the response was, you came to the right guy. I'm not sure if it was guy or person, but essentially, you came to the right guy. And that then Mr. Johnson and Mr. Warren showed up for the meeting with the ATF agent posing undercover. And the court has, for its benefit, the entire transcript of that meeting, which I would suggest is very revealing. And that is, there are comments made to the effect of, this is not the first time that comes from Mr. Johnson. There are a lot of questions from Mr. Warren, but they're not questions about, you know, I don't think we ought to be involved in this. They're questions about the practicalities. What do we do if we take their phones and not your phone to cover you? We don't want to hang around when we're done with this because we want to be gone. What happens if this turns into a gun battle? Do you think these guys are going to shoot? Now, I would just suggest that that's indicative of not somebody who's a babe in the woods, who's come into something that they're not prepared to do, but rather otherwise. And I suggest that what happened in terms of the verdict here was that the confidential informant got dirtied up about how long a contact he had with Mr. Johnson in the first place and that there was some idea that maybe he played on Mr. Johnson's loyalties and then that's where the entrapment arose. So I don't know if that's responsive to the Court's question. Well, I will say, just because you represent the government, this is the third sting operation, maybe the fourth, I've had in the last couple of calendars. And we had one argued to us, and as Judge Noonan on that panel made abundantly clear, he was really upset on the—and it happened, I think— is this the one where Zavia, or is there another, maybe, the ATF agent? You see, since guys have gone around and set up more than one of these. Right. And these sting operations, at least in the prior case, they had reason to believe that these folks had engaged in stash house robberies before. The evidence struck me as very, very thin, that these guys were stash house, drug type of people. And you're saying, well, it all came out on this Craigslist conversation that they were involved in drug dealing. Well, it's very clear that they were involved in drug dealing and that there were guns around. Okay. From a long time, from 2003 at least forward. Now, and I was indicating to the Court some of the evidence that, coming from the defendant's recordings, that the idea of a stash house robbery was not only not news, but was something that they contended that we came to the right guy. This is not the first time. And I also go into your point about this happens a lot. Mr. Warren flat out asked the ATF agent, are you police? Well, you wouldn't be police. You'd be ATF. You'd be DEA. I mean, they knew what was going on, on all levels, is what I would suggest to the Court. Help me understand the relevance of the stuff that was seized from Mia Moncrief's house. Okay. Go ahead. I'll get to the supervisor. I'll take the answer. I thought you were done with Judge Fischer's question. He had asked the supervisor his question, but I'll put that aside and respond. The relevance, that goes to Mr. Eddy's 404B argument. And what I'd suggest there is we've got to be clear on what the 404B evidence is. And I'd suggest the 404B evidence is there was evidence that Mia Moncrief and Daniel Warren were boyfriend-girlfriend and that he lived there. So did other people. Well, no, he lived there because he was her husband. Yeah, and so did other people. Well, Mr. Johnson came too. And weren't there other people as well? Well, yeah, people came in and out. Who stayed there? My reading of the record is not to the evidence, not to the same level that Mr. Warren did. And Mr. Johnson said this. Other people had access to the house. Mr. Johnson said, not to the bedroom. That was their area. That was his testimony at trial. I didn't go in there because that was their area. And the papers were found that had Johnson's name, not Warren's name on it. The papers found with Johnson's name on it, some of them were found in the living room where there were no guns and drugs, but there was a citation found with the guns and drugs in the bedroom. Whose name? Johnson's. Okay, what do you have? But this is evidence against Warren. So what do you have that links this to Warren? His admission that he stayed there because she let her. That's what he said. Others were it was boyfriend-girlfriend. And Johnson said, I wouldn't go in the bedroom because that's where they were. So you have all of that combined with. Let's assume for the sake of discussion you can link it to him, even though other people stay there and Johnson's name was on the papers and not Warren's. Let's assume for the sake of discussion you can link it to Warren. What does it prove? Well, the argument at trial from the government was it goes to the plan, which is essentially we're going to take these drugs and we're going to sell them on the street. That was the argument. How does that prove that? It's just standard 404B. It goes to the planning. I mean it sounds like it's propensity is what it sounds like. Well, first as far as propensity, in terms of Mr. Johnson, he's raised an entrapment defense. No, no, we're talking about Warren. Warren, okay. Well, all I can tell the court is that's how it was argued. I don't see any probative value to it other than to show that the guy uses drugs or may have access to the guns. It wasn't using drugs. These were baggies of marijuana that were cash. Okay, so it shows he has a propensity. Well, the argument was this goes to why they're interested and why they're getting involved in the stash house thing. They're going to take the drugs and they're going to run out and sell it on the street. That was the argument. Well, the problem I had with that is that I think your evidence on the felon in possession is pretty thin as to Warren. He never possessed – there's no evidence that he actually possessed the guns. There's an inference that he certainly wanted to possess them. I mean, they were going to get the guns out of the trunk and use them, but they weren't. Johnson got the guns. Johnson put the guns in the trunk. This is Johnson's car. Warren's a passenger. Where does he have control over? As the district court, when it made its ruling on this, two people can possess things. Right, but where's the joint access? They're both in the car. They're both bringing the guns down for the robbery. And as the court pointed out, it's not as if Mr. Johnson's going to go in with two guns waving. One's going to go to one and one's going to go to the other. It may be a technical argument, but then it gets back to the 404B evidence and prejudice. If you assume that it's propensity evidence and otherwise excludable, then we go to did it prejudice the trial, and I'm just suggesting your evidence to actual possession of the guns by Warren is pretty thin. Well, I would rely on the kinds of facts that Judge Silverman was using in his questioning of other cases. Right, but those facts sort of presume that he has an ability. He didn't have the keys to get the guns out of the trunk. Ability and knowledge, and I think that's what's required, and I'd suggest that both of those things. The jury certainly could infer that. Again, it gets back to the 404B. If it's thin, then 404B may be prejudicial. The admission of improper 404B evidence may be prejudicial. One thing I should also say about that, I think it's the case that as far as the evidence about the pistol and the shotgun, I don't believe that was subjected to a trial. The statements of Mia Moncrief about Daniel lived here, hearsay statements, were objected to, and part of it was stricken. But then the police officer said, Daniel Warren told me he stays here, and that was directly a defendant admission. So combined with the evidence that that was their territory, I would suggest that that's a pretty reasonable inference that those guns and drugs were his. So you want to get to supervised release? Yes. Thank you. The supervised release condition, I would suggest it's apparent that it's a gang-related condition, and the district court explained that there were gang-related conditions when Mr. Warren objected. Now, it's true he didn't specifically give the reasons for the court access, but it's pretty apparent what they are. They're two. One, given the long gang history of both defendants, there's the thought that they would be showing up for court, if they're not a litigant or a witness, for a couple of wrong purposes, showing support for fellow gang members when they're not supposed to be associated with gang members to begin with, and or possibly intimidating witnesses. So rehabilitation, protecting the public. That's obviously the theory I would suggest. And I'd also step back and say there's no indication that there's some other legitimate purpose for going to the courthouse that either defendant couldn't petition the probation officer, and failing that, to the court, said, I need to go to the courthouse. I need to attend the oral argument on some other case. I need to get familiar with it. So I suggest they're reasonable. I've talked to the probation office. It's not in the record, but I called up about this and asked, what are they for? And they say, well, our gang specialists put them in for these reasons, the reasons I've just given to the court. Okay. Anything further? Thank you. Thank you. We're over your time, but I'll give you one minute. I'll try to cover things very quickly. First of all, about the actual matter, about the who own the cars and the guns. The best thing I have is that these are the government's own words. The prosecutor said in closing argument, Candler, there are some evidence about him providing the guns. He was also there, and, of course, it was his car that was at the meeting on the 20th. So the guns and the car belonged to Candler, not to Mr. Johnson. No evidence that he ever possessed them, but that he knew they were in the car. There is evidence of that. Now, I respectfully disagree with counsel that there was no requirement to instruct on the element here. Jacobson says that non-entrapment is an element. Sullivan says you must instruct on the essential elements. I don't see why there has to be a requirement that there be some indication that each of the substance offenses had this as an additional element. You mentioned the jury questions. We usually take jury questions as a sign that the jury is confused or that there's some debate, or at least that the instructions were inadequate. That's why they sent out questions, because they still don't understand it after the charge. Finally, the government counsel says that we should speculate that the judge was fine for doing this, because you could speculate that the jury might disobey as to the reasons for denying the element instruction. You can deny an instruction on an essential element because you speculate the jury might disobey the instructions you give. I mean, that doesn't seem a reasonable basis. I just want to point out that I did argue severance as an error in this appeal. That's on pages 22 and 30 to 31 of the opening brief, that it was an error to do that. Like I just mentioned briefly on the supervised release, I cited a long string of cases in a number of 28 days showing that it doesn't matter what the probation officer says or what might possibly be in the mind of the judge. The judge must put it on the record in order to show that a deprivation of a constitutional right is narrowly tailored to the requirements of supervised release. That just didn't happen here. Not one word. Thank you, counsel. Thank you. The case just arguably submitted for decision. Thank you both for your arguments, and we will be in recess for the morning. All rise. Thank you. This court is in recess until tomorrow morning.  Thank you. Thank you.
judges: Thomas, Silverman, Fisher